FILED
OCT 29 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

BENJAMIN BELROSE )
*Plaintiff* )
)
Versus ) DOCKET No. 1:09cv1224
) LOG/IDD
CAMBER CORPORATION )
*Defendant* )

SERVE: Camber Corporation
c/o Corporation Service Company, Registered Agent
11 South 12th Street
Richmond, VA 23218

## COMPLAINT

1. *PRELIMINARY STATEMENT:*

    (1) The Plaintiff, Benjamin Belrose, brings this action to recover damages and for equitable relief under the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. section 1001 *et seq.*, particularly Section 510 (29 U.S.C. Section 1140), to redress his illegal discharge, which was done pretextually with the purpose of interfering with continuing rights to which he was entitled under an employee benefit plan.

    (2) The Plaintiff seeks compensatory damages for his claim of negligent misrepresentation brought as a supplemental state claim under Virginia state law.

II. *JURISDICTION:*

    (3) Jurisdiction over Plaintiff's claims is conferred on this Court pursuant to 29 U.S.C. §1132, 28 U.S.C. §1331, and 28 U.S.C. §1343(a)(4), and the plaintiff requests the Court to exercise supplemental jurisdiction over the plaintiff's pendent state claim pursuant to 28 U.S.C. section 1367.

III. *PARTIES:*

    (4) Plaintiff Benjamin Belrose is a citizen of the United States of America and a resident of Purcellville, Loudoun County, Virginia. At all times relevant to this action, plaintiff was a "participant" in the Defendant's employee benefit plans as defined by 29 U.S.C. §1002(7).

    (5) The Defendant, Camber Corporation, is a Delaware Corporation with a place of business in Falls Church, (Fairfax County) Virginia. The Defendant is an employer engaged in an industry or activity affecting commerce within the meaning of 29 U.S.C. Section 1002(5) and (12). Defendant is both the "plan sponsor," 29 U.S.C. §1002(16)(A) and the "plan administrator,' 29

Case 1:09-cv-01224-LO-IDD Document 1 Filed 10/29/09 Page 2 of 4 PageID# 2

U.S.C. §1002(16)(b) of the Camber Corporation Company Employees Benefits Plan.

(6) The Defendant has maintained and does maintain various employee benefit plans, including a comprehensive health insurance plan for all permanent full-time exempt employees, disability insurance, life insurance with benefits continuing for employees who retire under defendant's Retirement Plan or who become permanently and totally disabled, and a Retirement Plan.

(7) All of Defendant's plans described in paragraph 6 above are employee benefit plans within the meaning of 29 U.S.C. §1002(3) and 29 U.S.C. Section 1140.

IV. *FACTUAL ALLEGATIONS.*

(8) In September, 2001, the Plaintiff underwent aortic valve replacement (Hancock tissue valve) and a triple heart by-pass procedure ("three-vessel C.A.B.G.") which was performed under Plaintiff's previous employer's medical insurance coverage provided by Technology Automation and Management Inc., Plaintiff's then-employer. As the result of such surgery, Plaintiff was able to return to his employment with that company on or about November, 2001.

(9) On or about August 1, 2002 Plaintiff was hired by Defendant as a Systems Engineer and became a participant in Defendant's Retirement Plan and Group Insurance Plans. Defendant's disability plans for a pre-existing condition required a one-year qualification period prior to any employee being able to receive disability benefits for any pre-existing condition for which the employee was previously subject to medical treatment.

(10) At all times relevant to this Complaint, Plaintiff was covered under an appropriate employer-provided medical insurance coverage plan, whether by the Defendant or by Plaintiff's prior employer.

(11) At all times relevant to this Complaint, Plaintiff performed his job duties in a satisfactory and competent manner which was acceptable to his employer, Defendant herein.

(12) On or about 10th of September, 2002 the Plaintiff had an arthroscopic surgery performed on one of his knees, which resulted in an infection. By the end of the month of September, 2002, Plaintiff had emergency surgery to remove and eradicate the knee infection which had developed through no fault of the Plaintiff. As the result of the second knee surgery in September 2002, the Plaintiff was on a short-term disability leave. Plaintiff's physician recommended that plaintiff immediately have knee replacement surgery for both of his knees.

(13) While on disability for his knee condition, Plaintiff began to suffer erratic chest pains, angina, and other heart-related complications, which resulted in his being repeatedly hospitalized

Page 2 of 4

for Aortic Valve Disease, Coronary Angina, and Coronary Artery Disease.

(14) During the period of September 2002 through August, 2003, the Plaintiff was on disability leave for his knee issues.

(15) In August, 2003, the Plaintiff's heart condition required repeated hospitalizations.

(16) Plaintiff promptly informed his employer that he required a medically-related absence from work in order to have recommended surgery on his knees in September, 2002.

(17) To the best of the knowledge and belief of Plaintiff, the Defendant replaced the Plaintiff with another employee in September 2002.

(18) Following Plaintiff's surgery, he was diagnosed as having Coronary Artery Disease, s/p CABG, and Plaintiff developed post-surgical, ongoing and expensive medical treatment, continuing until the present.

(19) Plaintiff was advised by his doctors that he would not be able to return to work because of the permanent damage suffered to Plaintiff's heart.

(20) Plaintiff began receiving 90 day short term disability medical insurance benefits in September, 2002, and then in December 2002, began to receive long-term disability insurance benefits, which he continued to receive until October, 2005.

(21) In October, 2005, one of Plaintiff's general practitioner physicians, Dr. Sandhu, received a request for information from the insurance carrier for the Defendant's long-term Disability Insurance coverage. The request for information provided only two choices for the prepared statement concerning Plaintiff's ability to participate in activities. Dr. Sandhu marked the 'less-obnoxious' choice and returned the form to the Defendant's insurance plan facilitator.

(22) As the result of Dr. Sandhu's reply, the Defendant, by its insurance plan facilitator, made the determination that the Defendant was able to resume work on a fulltime basis, without having taken the opportunity to have a physical examination of the Defendant performed by a qualified cardiologist of its own choice.

(23) As the result of Dr. Sandhu's reply, the Defendant, by its insurance plan facilitator, informed the Plaintiff that in their determination the Plaintiff was able to return to work fulltime, and told him that his failure to do so would result in a termination of his long-term disability insurance benefits.

(24) On or about October 5, 2005, the Defendant terminated the long-term disability insurance benefits of the Plaintiff.

V. FIRST COUNT ERISA VIOLATION:

(25) Paragraphs 1 – 24 are repeated and re-alleged the same as though pleaded in full.

(26) By its termination of Plaintiff's long-term disability insurance benefits, the Defendant has caused the Plaintiff to lose long-term disability benefits, wage-alternates, and lost retirement benefits, and other fringe benefits and consequential damages.

WHEREFORE, the Plaintiff requests that this Court exercise jurisdiction over his claims and award:

1. Full equitable relief under ERISA, including reinstitution of plaintiff's lost employee long-term disability benefits, and prejudgment interest, etc.
2. Compensatory benefits on his state law claim;
3. Attorney's fees and court costs and
4. Such other relief as law and equity allow.

BENJAMIN BELROSE
By_____Counsel_____

*Susan Leslie-Fraser* (signature)
Susan Leslie-Fraser, Esq.
The Law Office of Susan Leslie-Fraser.
20 Ashby Street Suite 101
Warrenton, VA 20186
(540) 347-5631; (540) 349-5073(Fax)
slesliefraser@comcast.net